[No. 73892-1. En Banc.]
Argued February 12, 2004. Decided July 8, 2004.

*In the Matter of the Marriage of* SHAWN S. SUGGS, *Petitioner*, and ANDREW O. HAMILTON, *Respondent*.

*Aaron H. Caplan* (of *American Civil Liberties Union of Washington*) and *Steven N. Bogdon* (of *Blair, Schaefer, Hutchison & Wolfe, L.L.P.*), for petitioner.

*John A. Hays,* for respondent.

*Alice M. Ostdiek* on behalf of Northwest Women's Law Center, amicus curiae.

FAIRHURST, J. — The trial court issued an order for protection from unlawful civil harassment restraining petitioner from "knowingly and willfully making invalid and unsubstantiated allegations or complaints to third parties which are designed for the purpose of annoying, harassing,

vexing, or otherwise harming Andrew O. Hamilton and for no lawful purpose." Clerk's Papers (CP) at 415 (capitalization omitted). The Court of Appeals affirmed. We reverse on the ground that this antiharassment order is an unconstitutional prior restraint on speech.

## I. FACTS

Five years after their acrimonious dissolution, respondent Andrew Hamilton[1] filed a petition for an order for protection (unlawful harassment) against petitioner Shawn Suggs. Hamilton's declaration in support of the order alleged the following 11 incidents he believed constituted unlawful harassment:[2]

1. Suggs' husband informed the Cowlitz County Sheriff that he was concerned Hamilton would harm Suggs because of his past practice and because he carried a gun.

2. Suggs' husband informed the Cowlitz County Prosecutor that he was concerned Hamilton may harm him and Suggs.

3. Suggs told the Kelso City Manager that Hamilton was breaking the law and explained the allegations asserted in the petition for order for protection[3] she filed against Hamilton.

---

[1] Hamilton is a fully commissioned police officer with the Kelso Police Department.

[2] Hamilton also alleged six incidents dating back to the parties' separation "not for the purpose of supporting the actions for the current anti-harassment order but rather to let the court know that these are not isolated events. These have been a series of historical, ongoing events." CP at 3. One of those allegations was that Suggs informed the chief and a lieutenant of the Kelso Police Department and the captain of the Longview Police Department that Hamilton was sexually molesting the parties' daughter, although Suggs later admitted that Hamilton had not molested their daughter. Suggs also accused Hamilton of stealing her cellular telephone, although Hamilton assisted the police in arresting the person who stole it.

[3] Suggs filed a petition for order for protection before and after Hamilton filed his petition for an order for protection (unlawful harassment). Suggs' declaration supporting the order alleged that an on-duty and armed Hamilton recklessly pursued Suggs in his large sport utility vehicle after she picked up their children from school in her small compact vehicle. It also noted that Hamilton repeatedly

4. Suggs informed an emergency support shelter that Hamilton was harassing her and that she needed protection.

5. Suggs informed the finance department of the Kelso Police Department that Hamilton had a business license and questioned how a police officer could have a business license. She left a voice mail on Hamilton's business line providing her name and telephone number, then left a message on his home answering machine denying that she left the message on his business line.

6. Suggs informed a person at the community action program that she needed legal aid but first needed to know whether the person she was speaking with knew Hamilton or his new wife.

7. Suggs informed the domestic violence unit of the Longview Police Department that she wanted to file charges against Hamilton because he was harassing her.

8. Hamilton believed that Suggs contacted the Federal Bureau of Investigation about him.

9. Suggs wrote a letter to the editor of *The Daily News* suggesting that Hamilton harassed her.

10. Suggs sent a letter to Hamilton addressed to "Andrew<u>s</u> Hamilton."

11. A court sanctioned Suggs $500 for violating the parties' parenting plan and ordered her to pay the sanction via deductions from Hamilton's monthly child support payments. Upon receiving the first reduced child support payment, Suggs contacted the Office of Support Enforcement to complain.

The trial court granted Hamilton's petition and permanently restrained Suggs from "knowingly and willfully making invalid and unsubstantiated allegations or com-

---

came to her home unannounced and uninvited and that Hamilton exhibited anger toward her on numerous occasions.

plaints to third parties which are designed for the purpose of annoying, harassing, vexing, or otherwise harming Andrew O. Hamilton and for no lawful purpose." *Id.* at 415 (capitalization omitted). The trial court denied Suggs' motion for reconsideration.

Suggs appealed, alleging that the antiharassment order was an unconstitutional prior restraint on speech, Hamilton failed to prove unlawful harassment by a preponderance of the evidence, Hamilton did not suffer actual substantial emotional distress, the trial court erred in making the antiharassment order permanent, and she was entitled to immunity and fees under former RCW 4.24.510 (1999). *Suggs v. Hamilton*, noted at 116 Wn. App. 1016, 2003 Wash. App. LEXIS 1049, 2003 WL 1298665 at **4-5, 7-8. The Court of Appeals affirmed the antiharassment order and denied immunity and fees in an unpublished decision. *Id.* at **4, 8. It held that the antiharassment order was a constitutional prior restraint because it restrained unprotected libelous speech. *Id.* at **4-5. We granted the petition for review. *Suggs v. Hamilton*, 150 Wn.2d 1009, 79 P.3d 446 (2003).

## II. ISSUE

Is the antiharassment order an unconstitutional prior restraint on speech?

## III. STANDARD OF REVIEW

■ This court reviews constitutional challenges de novo. *Shoop v. Kittitas County*, 149 Wn.2d 29, 33, 65 P.3d 1194 (2003).

## IV. ANALYSIS

■ Chapter 10.14 RCW prohibits unlawful harassment. " 'Unlawful harassment' " is "a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person,

and which serves no legitimate or lawful purpose." RCW 10.14.020(1). Although " '[c]ourse of conduct' " includes "any other form of communication, contact, or conduct," "[c]onstitutionally protected activity" is not within its ambit. RCW 10.14.020(2). Moreover, the harassment chapter may not be used "to infringe upon any constitutionally protected rights including . . . freedom of speech." RCW 10.14.190.

 Suggs contends that the antiharassment order violates her freedom of speech because it is an unconstitutional prior restraint. In doing so, she argues that article I, section 5 of the Washington Constitution provides greater protection against prior restraints than the first amendment to the United States Constitution. Article I, section 5, prohibits prior restraints against protected speech but permits prior restraints against unprotected speech. *State v. Coe*, 101 Wn.2d 364, 374, 679 P.2d 353 (1984). Whether our state constitution affords greater protection to the sort of speech restrained by the antiharassment order is determined by the factors enumerated in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986). *Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 114-15, 937 P.2d 154, 943 P.2d 1358 (1997) (citing *Gunwall*, 106 Wn.2d at 58). Where, as here, the parties failed to brief the *Gunwall* factors, this court will not consider a claim that our state constitution affords greater protection. *State v. Dhaliwal*, 150 Wn.2d 559, 575-76, 79 P.3d 432 (2003).[4]

 Accordingly, we turn to federal case law to determine whether the antiharassment order is an unconstitutional prior restraint. The United States Supreme Court defines prior restraints as

---

[4] This court previously stated that *City of Seattle v. Huff*, 111 Wn.2d 923, 767 P.2d 572 (1989), held that article I, section 5 does not provide additional protection to harassing speech in nonpublic forums and that *Richmond v. Thompson* held that article I, section 5 does not provide any additional protection for defamatory speech. *Ino Ino*, 132 Wn.2d at 116 (citing *Huff*, 111 Wn.2d at 926; *Richmond v. Thompson*, 130 Wn.2d 368, 382, 922 P.2d 1343 (1996)). We cannot rely on *Huff* or *Richmond*. As discussed below, we are unable to determine what type of speech this antiharassment order actually restrains. Moreover, the forum analysis of *Huff* does not apply and *Richmond* focused on article I, section 4 (the petition clause), not article I, section 5. *Huff*, 111 Wn.2d at 926-28; *Richmond*, 130 Wn.2d at 379-82.

"[A]dministrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." M[elville B.] Nimmer, Nimmer on Freedom of Speech[: *A Treatise on the Theory of the First Amendment*] § 4.03, p. 4-14 (1984). . . . Temporary restraining orders and permanent injunctions—*i.e.*, court orders that actually forbid speech activities—are classic examples of prior restraints.

*Alexander v. United States*, 509 U.S. 544, 550, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993). This antiharassment order is a prior restraint because it forbids Suggs' speech before it occurs; it forbids her from "knowingly and willfully making invalid and unsubstantiated allegations or complaints to third parties which are designed for the purpose of annoying, harassing, vexing, or otherwise harming Andrew O. Hamilton and for no lawful purpose." CP at 415 (capitalization omitted).

Prior restraints carry a heavy presumption of unconstitutionality. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S. Ct. 631, 9 L. Ed. 2d 584 (1963). In *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 51 S. Ct. 625, 75 L. Ed. 1357 (1931) the United States Supreme Court declared that prior restraints are permissible only in exceptional cases such as war, obscenity, and "incitements to acts of violence and the overthrow by force of orderly government." 283 U.S. at 716.

The Court again considered the constitutionality of limiting certain types of speech in *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S. Ct. 766, 86 L. Ed. 1031 (1942). The trial court found Chaplinsky guilty of violating a state statute prohibiting persons from uttering offensive, derisive or annoying words, calling another person offensive or derisive names, or making any noise or exclamation in another's " 'presence and hearing with intent to deride, offend or annoy him, or to prevent him from pursuing his lawful business or occupation.' " *Chaplinsky*, 315 U.S. at 569 (quoting 1926 N.H. LAWS, ch. 378, § 2). Chaplinsky argued that the statute was an unreasonable restraint on his freedom of speech. *Id*. The Court disagreed, finding that the statute prohibits fighting words—words that are not

protected by the First Amendment. *Id.* at 573. In dicta, the Court provided a laundry list of "certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." *Id.* at 571-72. Included in the list was libelous, lewd, and obscene speech. *Id.*

Hamilton successfully argued to the Court of Appeals that this antiharassment order is a constitutional prior restraint because it restrains libelous speech—speech included in the *Chaplinsky* list. *Suggs*, noted at 116 Wn. App. 1016, 2003 Wash. App. LEXIS 1049, 2003 WL 1298665, at *5. In doing so, both Hamilton and the Court of Appeals cite a footnote from a Washington Court of Appeals decision explaining that "[l]ibelous speech is not protected and, therefore, may be a basis for an antiharassment order." *State v. Noah*, 103 Wn. App. 29, 39 n.1, 9 P.3d 858 (2000).

Reliance on this footnote statement is misplaced for four reasons. First, *Noah* itself acknowledged that the statement was dicta; the statement is immediately followed with "[n]onetheless, we will exclude it from our consideration." *Id.* Second, unlike the current case, the plaintiff in *Noah* also filed a defamation suit for damages. *Id.* at 37. Third, the *Noah* reasoning conflicts with the footnote because the reasoning focuses on the *contact* between the victim and the perpetrator and explains that no-contact orders are "narrowly tailored by focus[ing] on the victim and a no-contact zone around the victim. It leaves open ample alternative channels of communications, by leaving open every alternative channel so long as no-contact is made with the victim and the proscribed zone is not violated." *Id.* at 41-42. Fourth, and most importantly, we cannot be certain that the antiharassment order in this case restrains libelous speech.

Labeling certain types of speech "unprotected" is easy. Determining whether specific instances of speech actually fall within "unprotected" areas of speech is much more difficult. The United States Supreme Court has repeatedly

noted that the line between protected and unprotected speech is very fine. In *Carroll v. President & Commissioners of Princess Anne*, 393 U.S. 175, 183-84, 89 S. Ct. 347, 21 L. Ed. 2d 325 (1968), for example, the Court stated:

> An order issued in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order. In this sensitive field, the State may not employ "means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Shelton* v. *Tucker*, 364 U.S. 479, 488[, 81 S. Ct. 247, 5 L. Ed. 2d 231 (1960)]. In other words, the order must be tailored as precisely as possible to the exact needs of the case.

*See also S.E. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559, 95 S. Ct. 1239, 43 L. Ed. 2d 448 (1975) ("It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable.").

This antiharassment order very generally forbids Suggs from "knowingly and willfully making invalid and unsubstantiated allegations or complaints to third parties which are designed for the purpose of annoying, harassing, vexing, or otherwise harming Andrew O. Hamilton and for no lawful purpose." CP at 415 (capitalization omitted). Our consideration of what type of speech the order restrains yields three options. Initially, the phrase "invalid and unsubstantiated complaints to third parties" makes it appear as if the order restrains libelous speech. *Id.* Second, the phrase "designed for the purpose of annoying, harassing, vexing, or otherwise harming Andrew O. Hamilton and for no lawful purpose" makes it appear as if the order restrains harassing speech. *Id.* Finally, the combination of the two phrases—"invalid and unsubstantiated complaints to third parties" and "designed for the purpose of annoying, harassing, vexing, or otherwise harming Andrew O. Hamilton and for no lawful purpose"—makes it appear as if the order restrains "harassment via libel," a unique hybrid of both harassing and libelous speech. *Id.*

This confusion leads us to conclude that the antiharassment order is an unconstitutional prior restraint on speech because it lacks the specificity demanded by the United States Supreme Court for prior restraint on unprotected speech. Indefinite wording is impermissible when the Court has repeatedly stated that the line between protected and unprotected speech is very fine. Such wording leaves us unable to ascertain what speech the order actually prohibits.

The order's "invalid and unsubstantiated" language is particularly problematic in this context because what may appear valid and substantiated to Suggs may ultimately be found invalid and unsubstantiated by a court. *Id.* Fearful of what allegations may or may not ultimately be deemed invalid and unsubstantiated, Suggs may be hesitant to assert any allegations, including those she deems truthful. Thus, Suggs is left with an order chilling all of her speech about Hamilton, including that which would be constitutionally protected, because it is unclear what she can and cannot say. Chilling is intolerable in the first amendment context and is exacerbated by the fact that many of the incidents that Hamilton based his antiharassment order on pertain to the efforts of Suggs and her husband to address what they perceive is Hamilton's harassment.

## V. CONCLUSION

We find that the antiharassment order is an unconstitutional prior restraint on speech. We reverse the Court of Appeals in part and vacate the order.[5] We affirm the Court

---

[5] Because we resolve this case on constitutional grounds, we do not discuss the remaining challenges raised by Suggs other than to note that specific findings of fact on each of the legitimate or lawful purpose factors enumerated in RCW 10.14.030 are helpful on review. In addition, the argument that Suggs is immune from harassment charges under former RCW 4.24.510 (1999) is procedurally barred because, as the Court of Appeals essentially held, it is an affirmative defense that should have been rased at trial. *See Doe v. Gonzaga Univ.*, 99 Wn. App. 338, 351, 992 P.2d 545 (2000) (reasoning that defendant's immunity claim under former RCW 4.24.510 was an affirmative defense that could not be raised for the first time on appeal), *aff'd in part, rev'd in part on other grounds*, 143 Wn.2d 687, 24 P.3d 390

of Appeals in part to the extent that it dismissed Suggs' immunity claim as a waived affirmative defense.

ALEXANDER, C.J., and JOHNSON, SANDERS, IRELAND, BRIDGE, CHAMBERS, and OWENS, JJ., concur.

MADSEN, J., concurs in the result.

After modification, further reconsideration denied November 2, 2004.

[No. 74872-1. En Banc.]
Argued May 13, 2004. Decided July 8, 2004.

(2001), *rev'd in part*, 536 U.S. 273, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002); *Port of Longview v. Int'l Raw Materials, Ltd.*, 96 Wn. App. 431, 435-36, 979 P.2d 917 (1999) (also reasoning that an immunity claim under former RCW 4.24.510 was an affirmative defense); CR 8(c). Suggs first raised the immunity defense in her motion for reconsideration which was too late and, as such, it is deemed waived. *See, e.g., Wesche v. Martin*, 64 Wn. App. 1, 6-7, 822 P.2d 812 (1992) (reasoning that "[i]f an affirmative defense is not affirmatively pleaded, asserted in a motion under CR 12(b), or tried by the express or implied consent of the parties, the defense is deemed waived," and holding that because the defendants did not raise a statute of limitations defense until they filed a motion for reconsideration, the court would not consider the defense).