IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of: The Marriage of

BRIAN CHRISTOPHER YORKS,

Respondent,

v.

OLIMPIA GEORGIANA YORKS,

Appellant.

No. 84480-6-I

DIVISION ONE

UNPUBLISHED OPINION

DíAZ, J. — The trial court entered a parenting plan in this matter which awarded the respondent, Brian Yorks, decision-making authority and the majority of residential time, despite his history of domestic violence against the appellant. The trial court also imposed restrictions on the appellant and ordered the parties to mediate their future disagreements. Appellant now challenges each of those decisions, as well as a provision in the parenting plan prohibiting the parties from making "unsubstantiated" reports to the government, which she claims violates her First Amendment rights. We hold the trial court failed to make required accompanying findings for each of its parenting decisions. We remand this matter for the court to make such findings—if they may be made on the record before it—and to strike the anti-reporting provision from the amended parenting plan.

## I.    BACKGROUND

Brian Yorks (Brian) and Olimpia Yorks (Gina)[1] married in 2008 and separated on February 14, 2020.  They have two children together, currently approximately ages 10 and 8.  It is undisputed that their marriage was turbulent.

In 2016, during an argument, Brian broke into a bathroom, where Gina had locked herself in, and took her phone to prevent her from calling 911, which Brian does not dispute.  The State charged him with malicious mischief and interfering with reporting domestic violence.  The State dismissed the charges with prejudice, after Gina declined to cooperate.

In 2020, Gina obtained a domestic violence protection order (DVPO) against Brian, alleging he sexually assaulted her after she took medication that impaired her.  Law enforcement arrested Brian on suspicion of rape in the second degree (with a domestic violence indicator), assault in the fourth degree, and interfering with reporting domestic violence.  Gina sought a criminal no contact order (NCO), but the State ultimately did not file charges.  Shortly thereafter, Brian filed a petition for divorce, and contentious proceedings ensued.

On July 14, 2022, the superior court dissolved the marriage and entered a parenting plan, in which the court granted Brian sole decision-making and found that Gina (a) had a long-term emotional or physical problem interfering with her ability to parent and (b) engaged in an abusive use of conflict.  The court restricted Gina's decision-making authority over and residential time with the children under

---

[1] For clarity, we refer to the parties by their first name.  Appellant's brief refers to Olimpia Yorks as Gina, so we will use her preferred name throughout this opinion.

RCW 26.09.191(1) and (2)(a).[2]

In its oral ruling, the court found that Brian committed "acts of domestic violence" against Gina. The court's written order, however, indicated both that "neither parent has" engaged in domestic violence and that "Brian Yorks has a history of Domestic Violence against the mother."

The court further ordered that if either party "files a . . . complaint [with child protective services (CPS)], police report, or DVPO that are determined to be unfounded," the other party may petition the court to suspend the offending parent's residential time.

Gina filed a motion for reconsideration on July 25, 2022. The trial court largely denied the motion, though in clarifying parts of its earlier written order, found that Gina also "engaged in conduct that could clearly be classified as domestic violence." Gina timely appeals.

## II. ANALYSIS

The trial court's discretion for creating a parenting plan is limited by chapter 26.09 RCW. In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). "In applying rules of statutory construction to the unambiguous language of a statute, "[t]he court must give words in a statute their plain and ordinary meaning unless a contrary intent is evidenced in the statute." Caven v. Caven, 136 Wn.2d 800, 806, 966 P.2d 1247 (1998) (quoting Erection Co. v. Dep't of Labor &

---

[2] The trial court further ordered that Gina could regain residential time and decision-making authority after she verified she engaged in appropriate therapy, and met other conditions. Because Gina does not assign error to these decisions, we will discuss them no further.

Indus., 121 Wn.2d 513, 518, 852 P.2d 288 (1993)). And courts review issues of statutory interpretation de novo. Caven, 136 Wn.2d at 806.

A.    The Court's Findings as to Brian

1.   Residential Time

A "parent's residential time with the child shall be limited if it is found that the parent has engaged in," among other conduct, "a history of acts of domestic violence as defined in RCW 7.105.010." RCW 26.09.191(2)(a). This court has held that "[b]y using the word 'shall' we presume that the legislature created a duty rather than conferring discretion, unless the statute reflects a contrary intent." Matter of C.A.S., 25 Wn. App. 2d 21, 27, 522 P.3d 75 (2022) (citing State v. Bartholomew, 104 Wn.2d 844, 848, 710 P.2d 196 (1985)). However, a trial court may choose not to limit a parent's time with the child if it "expressly finds" either that (i) the child will be safe with that parent and the probability the parent's harmful conduct will recur is so remote it is not in the child's best interests to apply a limitation, or (ii) the parent's conduct did not have an "impact" on the child. RCW 26.09.191(2)(n). Domestic violence is defined as "[p]hysical harm . . . assault, or the infliction of fear of physical harm, bodily injury, or assault," etc. RCW 7.105.010(9)(a).

Gina argues that "the court did not make the required additional express findings to allow Brian to be the primary residential parent." We agree.

The court found that both parents engaged in domestic violence and, in its order clarifying its initial ruling, commented that "[t]his case presents the very difficult balancing that Trial Court's must engage in when both parents present with

issues, some long term and debilitating, that interfere with their ability to currently parent." The trial court further noted that its "ruling was clearly premised as it related to the current, meaning at the time, ability of the parties to parent and what would be in the children's best interest." However, the trial court nowhere expressly found that the children would be safe with Brian and that his harmful conduct very likely would not reoccur, or that his conduct did not impact them.[3]

Citing to In re Welfare of A.B., 168 Wn.2d 908, 921, 232 P.3d 1104 (2010), Brian argues that this court "can imply or infer" the omitted findings if the record clearly demonstrates that the omitted findings were actually intended by the trial court. Brian argues that the evidence in the record is "consistent with" the trial court's final orders and this court "can infer the finding of no harm to the children." By way of example, he multiple times points to Gina's admission that "Brian was never a danger to the children."

It is true that, when evaluating parental unfitness in a dependency matter, we may "imply or infer" certain findings. Id. However, this is not a dependency matter and the "plain and ordinary meaning" of RCW 26.09.191(2)(n) does not permit us to relieve the trial court of the requirement that it must make the required findings. Caven, 136 Wn.2d at 806.

Moreover, this requirement is no mere bureaucratic task. Although Gina may have uttered the words that Brian was not a danger to their children, the trial

---

[3] The GAL opined that there were "no real safety issues that would require supervised visitation" if the children stayed with Brian. But the court did not adopt or reference these findings in any of its orders, oral or written. This opinion also does not address whether Brian's harmful conduct against Gina is unlikely to reoccur.

5

court still must announce whether—in considering all the evidence before it—it effectively agrees with that statement and whether Brian's abuse was unlikely to reoccur, or whether the children were unimpacted by the domestic violence.[4]

In response, citing to DeVogel v. Padilla, 22 Wn. App. 2d 39, 47, 509 P.3d 832 (2022), Brian argues that "nothing in the statute prevents a trial court from granting the 'abuser' majority residential time and sole decision-making when both parents suffer from §191 findings." While that may be true, the court may decline to impose restrictions, again, only if it makes the required findings expressly. RCW 26.09.191(2)(n). And, as Brian conceded at oral argument, the findings in DeVogel were "more detailed" than here. Yorks v. Yorks, No. 84480-6-I (Jan. 10, 2024), at 11 min., 25 sec., through 11 min., 37 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2024011243/?eventID=2024011243. Additionally, whether the court's findings were sufficiently express was not before this court in DeVogel.

Thus, we remand this matter to the trial court to make express findings—if the current record before it allows—as to whether (i) the children would be safe with Brian and there is no remote possibility he would commit domestic violence again, or (ii) the children were not impacted by the history of domestic violence. Caven, 136 Wn.2d at 806; RCW 26.09.191(2)(n).[5]

---

[4] We note that, even assuming a person who abuses their spouse is not a physical danger to their child, it is a different question whether a child has been "impacted" by the domestic violence at all. To be clear, we take no opinion whether the trial court should or is able to make such a finding based on the record before it.

[5] Citing to In re Marriage of C.M.C., 87 Wn. App. 84, 88-89, 940 P.2d 669 (1997), Brian also argues that the term "history acts of domestic violence" requires multiple acts of abuse to trigger a limitation, and that the court "found only a single isolated

2. Decision-making

A "permanent parenting plan *shall not require* mutual decision-making . . . if it is found that a parent has engaged in any of the following conduct . . . a history of acts of domestic violence as defined in RCW 7.105.010." RCW 26.09.191(1)(a) (emphasis added).

Here, the court found that Brian had a "clearly established" history of acts of domestic violence against Gina. But, the court also found "limiting .191 factors as to" Gina and, more specifically, that Gina had "engaged in conduct that could clearly be classified as domestic violence." The trial court then designated Brian the sole decision-maker for the children's education, non-emergency health care, extracurricular activities, and work-related daycare.

Gina argues that the trial court abused its discretion by awarding primary decision-making to Brian solely because he abused Gina in the past. This particular argument is unpersuasive.

In DeVogel, we affirmed a trial court order granting the "abuser" primary decision-making authority because, "by its plain language," RCW 26.09.191(1) prohibits only 'mutual decision-making'" and it does not prohibit decision-making by the parent with a history of domestic violence. DeVogel, 22 Wn. App. 2d at 46 (quoting RCW 26.09.191(1)). We reached this conclusion because "[w]e cannot

---

incident." First, this statement is simply factually inaccurate. The court found that Brian committed "act*s* of domestic violence" against Gina. And as this court recently held in an unpublished opinion, the "statute [at issue in C.M.C.] was later amended and is not at issue in the present case." Condel v. Condel, No. 84310-9-I, slip op. at 17 (Wash. Ct. App. July. 31, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/843109.pdf. We cite this case for illustrative purposes, as it is "necessary for a reasoned decision." GR 14.1(c).

add words or clauses to an unambiguous statute when the legislature has chosen not to include that language." Id. (quoting State v. Delgado, 148 Wn.2d 723, 727, 63 P.3d 792 (2003)). In other words, this statute requires the court, when there is a history of domestic violence, to award primary decision-making authority to only one parent, but it does not specify *which* parent.

There are, however, three other deficiencies with the trial court's order. First, to the extent that the court awarded Brian decision-making authority because of Gina's history of domestic violence, the trial court does not make any finding as to which of Gina's behaviors or conduct constitutes an act(s) of domestic violence. RCW 26.09.191(1)(c) (requiring the court has "found" that a parent has engaged in certain harmful conduct). It is simply unclear what of Gina's conduct rises to the level of domestic violence.

Second, none of the court's orders specify who the parent is, for purposes of restricting joint decision-making, who "engaged in a history of acts of domestic violence." Id. It is simply unclear who is the "parent with a history of acts of domestic violence" that justifies this restriction. Id.

Finally, the court indicated it was "balancing" a situation where "both parents present with issues, some long term and debilitating, that interfere with their ability to currently parent." But nowhere does the court explain why that balancing favored Brian.

To be clear, the text of RCW 26.09.191(1) does not expressly contemplate a situation where the trial court finds both parents to be responsible for domestic violence. Further, this court has not addressed in a published opinion a case in

which where both parents were found to have contributed to domestic violence.[6] However, following a trial without a jury, "meaningful appellate review requires entry of adequate and detailed findings of fact and conclusions of law." Citizens for Responsible and Organized Planning (CROP) v. Chelan County, 105 Wn. App. 753, 755, 21 P.3d 304 (2001). The purpose of findings of fact is to ensure that the decisionmaker "has dealt fully and properly with all the issues in the case before he decides it and so that the parties involved" and the appellate court "may be fully informed as to the bases of his decision when it is made." In re LaBelle, 107 Wn.2d 196, 218-19, 728 P.2d 138 (1986) (citations omitted) (internal quotation marks omitted). We simply do not know why the balance here favored Brian, if both engaged in domestic violence or otherwise could have had limitations imposed.

Here, again, the trial court, while mentioning that Gina may also have committed domestic violence, did not say what conduct of Gina's constituted domestic violence (or the basis of her restrictions), or how it weighed it against Brian's conduct before designating Brian the parent with primary decision-making authority.

Thus, we remand this matter for the trial court to clarify the basis of its restrictions on one party's decision-making authority, if such findings may be made on the record before it.

---

[6] In an unpublished opinion, we held that a court must impose RCW 26.09.191(1) restrictions even where both parents engaged in domestic violence. In the Matter of: The Parenting and Support of Z.C., No. 84897-6-I, slip op. at 13 (Wash. Ct. App. November 13, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/848976.pdf. This holding was predicated on a clear finding of the acts that constituted the bilateral domestic violence, which is lacking here. Id. at 12-13 (a police report of a specific incident of mutual combat). We cite to this unpublished opinion as "necessary for a reasoned decision." GR 14.1(c).

3.  <u>Mediation of Future Disputes</u>

The statutory restriction on parenting plans states that the trial court shall not require a permanent parenting plan to designate a dispute resolution process "other than court action" if the parent engaged in the aforementioned abusive conduct. RCW 26.09.191(1). "Mediation is generally inappropriate in cases involving domestic violence." RCW 26.09.016.

The parenting plan here states:

> If you and the other parent disagree: From time to time, the parents may have disagreements about shared decisions or about what parts of this parenting plan mean. To solve disagreements about this parenting plan, <u>the parents will go to a dispute resolution provider or court.</u> The court may only require a dispute resolution provider if there are no limitations in 3a.
>
>  . . .
>
> You may go back to court if the dispute resolution process doesn't solve the disagreement or if you disagree with the arbitrator's decision.

(emphasis added).

Gina argues the trial court erred by providing Brian and her the option to resolve disagreements about the parenting plan with a mediator. Gina contends that the court must have a clear role when ordering compliance with the parenting plan. We agree.

The court's order does contemplate that it will have some role in the resolution of disputes, and the statute does not specify *how* a court must be involved, only that it must. RCW 26.09.191(1). However, here, the court failed to specify its precise role in the dispute resolution process after mediation fails or is unsatisfying to one party. The order merely states that the parties will "go back to court." It is

10

unclear whether the parties will return for further mediation, further fact-finding, or simply for the court's decision on any remaining issues.

This lack of clarity is especially important because of the *reasons* mediations are disfavored in cases involving domestic violence. Specifically, when establishing a parenting plan, "the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities." RCW 26.09.002. As "children's resilience and well-being are so closely tied to the physical and emotional safety of their primary caretakers (typically the non-offending parent), the legislature has recognized that ensuring this safety is consistent with children's best interests." GENDER & JUST. COMM'N, WASH. ST. SUP. CT., DOMESTIC VIOLENCE MANUAL FOR JUDGES 10-13 (2016), https://www.courts.wa.gov/content/manuals/domViol/chapter10.pdf [https://perma.cc/7P66-6RAU]. This goal is accomplished by limiting potential flashpoints and creating a greater degree of separation between the parties. Id. at 10-14 ("Court orders requiring parents to negotiate delicate issues related to raising children, particularly immediately after a separation, may be very stressful for both the parents, and, indirectly the children, and especially so when one parent has a history of threatening, abusive, and controlling behavior"). Mediation is inconsistent with such separation and could aggravate unhealthy or unsafe dynamics, in a way detrimental to the children.

Thus, we remand this matter for the trial court to clarify its role in the future dispute resolution process, after considering whether it is still proper to order mediation following its findings of domestic violence.

B.      The Court's Findings as to Gina

On appeal, Gina did not assign error to the trial court's findings that she engaged in abusive use of conflict. Thus, the findings related to her use of conflict are verities, so long as they are supported by substantial evidence. Chandola, 180 Wn.2d at 642. Further Gina does not anywhere challenge the sufficiency of the evidence underlying any of the findings related to her abusive use of conflict. And, Gina does not assign error to the court's ultimate conclusion that restrictions on her residential time or decision-making were proper when based upon the court's independent ruling that she engaged in abusive use of conflict. Although Gina brings other challenges to the restrictions the court imposed upon her, we may affirm the trial court on any basis supported by the record. In re Marriage of Raskob, 183 Wn. App. 503, 514-515, 334 P.3d 30 (2014). Thus, we hold that the abusive use of conflict finding is an independently sufficient basis to support the restrictions on her residential time and decision-making authority. In turn, we need not reach her other assignments of error and, as she concedes at oral argument, Gina may not re-litigate the finding of abusive use of conflict on remand or in any future appeal. Wash. Ct. of Appeals oral argument, supra at 4 min., 54 sec. through 5 min., 18 sec.

C.      Gina's First Amendment challenge

Prior restraints are "[a]dministrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." In re Marriage of Suggs, 152 Wn.2d 74, 81, 93 P.3d 161 (2004).

"Prior restraints carry a heavy presumption of unconstitutionality." Id.

In Suggs, a family law proceeding similar to this one, a trial court issued a post-dissolution antiharassment order that "permanently restrained Suggs from 'knowingly and willfully making invalid and unsubstantiated allegations or complaints to third parties which are designed for the purpose of annoying, harassing, vexing, or otherwise harming Andrew O. Hamilton and for no lawful purpose.'" Id. at 78-79. The Supreme Court reversed, concluding "[t]he order's 'invalid and unsubstantiated' language is particularly problematic in this context because what may appear valid and substantiated to Suggs may ultimately be found invalid and unsubstantiated by a court." Id. at 84.

As part of the parenting plan, the court ordered:

If at any time, *either party files a CPS complaint, police report, or DVPO that are determined to be unfounded,* the other parent may petition the court to suspend that parent's residential time.

(emphasis added).

Gina argues that the provision of the parenting plan limiting complaints to CPS and law enforcement are an unconstitutional prior restraint on her right to free speech. We agree and remand to strike this provision of the future amended parenting plan.

As a preliminary matter, it is important to note that Brian does not contest that Suggs is on point and good law. Instead, he makes three separate arguments, each of which we do not find persuasive.

First, Brian argues that because the punishment (suspension of Gina's residential time) would occur after the fact, it would not be a "prior" restraint on Gina's

13

speech. Brian points to the fact that, after the court enacted the parenting plan, he petitioned the court to modify the parenting plan after he alleged Gina made false reports to CPS and law enforcement, but Gina was "not punished." Thus, he claims the restraint is not "automatic."

Lack of punishment *after the fact* is not dispositive for whether free speech is chilled. "If it can be said that a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes' it at least for the time." Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976). More-over, a "'chilling effect" on First Amendment rights is a recognized present harm, not a future speculative harm[.]" Walker v. Munro, 124 Wn.2d 402, 416, 879 P.2d 920 (1994). Thus, fear of such punishment chills Gina's right to contact CPS and law enforcement now, even though the "punishment" may or may not occur in the future.

Second, and somewhat similarly, Brian argues that Gina does not have standing to bring a First Amendment claim. Brian avers that a party's right must actually be invaded, "not merely some possible, remote consequence." Br. of Resp't at 59 (quoting Sheets v. Benevolent and Protective Order of Keglers, 34 Wn.2d 851, 855, 210 P.2d 690 (1949)). However, "[o]ne does not have to await the consummation of threatened injury to obtain preventative relief." Babbitt v. United Farm Workers Nat'l Union, 442 U.S 289, 298, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979) (alteration in original). Because, "in the First Amendment context, '[l]it-igants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the

statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." Va. v. Am. Booksellers Ass'n, Inc., 484 U.S. 383, 392-93, 108 S. Ct. 636, 643, 98 L. Ed. 2d 782 (1988) (overruled on other grounds) (quoting Sec'y of State of Md. v. J.H. Munson Co., 467 U.S. 947, 956-957, 104 S. Ct. 2839, 81 L. Ed. 2d 786 (1984)). Accordingly, Gina does have standing.

Third, Brian argues Gina cannot bring a First Amendment claim on appeal because she did not raise the claim in the trial court. However, "Under RAP 2.5(a), an alleged error may be raised for the first time on appeal if it involves a manifest error concerning a constitutional right. Issues involving the exercise of free speech in the civil arena can be raised for the first time on appeal." In re Dependency of T.L.G., 139 Wn. App. 1, 18, 156 P.3d 222 (2007). Brian does not contest that the matter concerns a constitutional right. Here, we exercise our discretion to find the error is manifest because, on the face of the order itself, it is a prior restraint, i.e., a "judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur," which carries a heavy presumption of unconstitutionality. Suggs, 152 Wn.2d at 81. Thus, we have discretion to examine this claim under RAP 2.5(a).

More specifically, here, as in Suggs, "[t]he order's . . . 'unsubstantiated' language is particularly problematic in this context because what may appear valid and substantiated [to Gina] may ultimately be found invalid and unsubstantiated by a court." Id. at 84.

The trial court's order restricting Gina is more restrictive than that in Suggs.

There, the trial court banned the petitioner from "knowingly" making "invalid and unsubstantiated" complaints with the purpose of annoying or vexing the respondent and "for no lawful purpose." Id. at 79-80. However, here, the trial court does not even limit CPS complaints to those that are *knowingly* unsubstantiated or *intended* to harass. Rather, the order encompasses merely any complaint by either party, if the court finds after the fact the complaint is without merit. In turn, Gina's right to free speech about Brian and the children, even that which is constitutionally protected, will be chilled because it is unclear what she can and cannot say. Id. at 84. The order may make Gina hesitant to assert any allegations against Brian, even those she thinks are truthful, for fear of sanction, if the court later finds no support for the allegations. Id.

Accordingly, we conclude the trial court's order is an impermissible infringement upon Gina's First Amendment rights.[7]

D.    Fees

We decline to use our discretion to grant Gina her attorneys fees. RAP 18.1(a) provides that a party is entitled to a fee award on appeal if allowed by applicable law. "RCW 26.09.140 provides that '[u]pon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs.'" Chandola, 180 Wn.2d at 656 (quoting In re Marriage of Rideout, 150 Wn.2d 337, 357,

---

[7] We need not reach Gina's claim that the parenting plan provision also inhibits her right to petition the government for a redress of grievances. "Although the right to free speech and the right to petition are separate guaranties, they are related and generally subject to the same constitutional analysis." In re Marriage of Meredith, 148 Wn. App. 887, 896, 201 P.3d 1056 (2009).

77 P.3d 1174 (2003)) (alteration in original).  In dissolution proceedings, appellate courts have "discretion to order a party to pay fees and costs to the opposing party [after] consider[ation] of financial circumstances.'" Id.  "The prevailing party standard does not apply in such proceedings."  In re Marriage of Wilson, 117 Wn. App. 40, 51, 68 P.3d 1121 (2003).

Having considered the record, including the parties' financial resources, we deny the request because this opinion largely upholds the trial court's orders, including the restrictions imposed on Gina, while requiring the court only to supplement its prior findings, as appropriate.

## III.    CONCLUSION

We remand this matter to the trial court to strike the provision regarding the parties' rights to file complaints with CPS and law enforcement, and to make additional findings, as permitted by the record as it currently exists, consistent with the direction above.  Additionally, if those additional findings result in substantive changes to the residential time, decision-making, or other provisions of the plan, the court will need to modify and make consistent related provisions of the parenting plan arising from those new findings.

Díaz, J.
_____

WE CONCUR:

Smith, C.J.
_____

Dwyer, J.
_____

17