**FILED**
**OCTOBER 28, 2025**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | |
| | ) | No. 40742-0-III |
| JARED BARBER, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| MINDY TANIMOTO (FKA BARBER), | ) | |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Mindy Tanimoto was granted a protection order that restrained her former spouse, Jared Barber. Six months later, Mr. Barber filed a petition for a protection order against Ms. Tanimoto. A superior court commissioner granted the petition following a hearing on the merits. Ms. Tanimoto moved for revision of the commissioner's order. A superior court judge denied her motion.

Ms. Tanimoto appeals, arguing the judge based her order on erroneous interpretations of coercive control and harassment, misinterpreted the evidence in finding

coercive control and harassment, and reviewed inadequate records of the prior proceedings thereby creating an inadequate record. We disagree with Ms. Tanimoto's arguments and affirm.

BACKGROUND

Mr. Barber and Ms. Tanimoto were formerly married, separated in 2020, and divorced in 2022. They share custody of two children. In December 2023, Ms. Tanimoto was granted a protection order that restrained Mr. Barber. Six months later, Mr. Barber filed a petition for a domestic violence protection order against Ms. Tanimoto, alleging that Ms. Tanimoto "constantly harass[es]" him. Clerk's Papers (CP) at 25. Specifically, Mr. Barber claimed that after Ms. Tanimoto obtained the protection order, she began showing "up to the kid's [sporting] events and [would] intentionally sit[] right next" to him, forcing him to move to another seat to avoid violating the order. CP at 26. Mr. Barber alleged Ms. Tanimoto then "filed a Motion for Contempt against" him for sitting too close to her at one of the children's sporting events. CP at 26. Although the court did not find Mr. Barber in contempt, he claimed Ms. Tanimoto reported the incident to law enforcement which resulted in "pending charges for violating the protection order." CP at 26.

Mr. Barber also alleged that, on another occasion, he had parked his truck at least 50 feet from Ms. Tanimoto's front door, in front of her driveway, during an exchange of the children. After exiting his vehicle to remove their son from his car seat,

Ms. Tanimoto purposefully ran "up to [his] truck" while videorecording him with her phone. CP at 26. Although Mr. Barber claimed that he got back into his vehicle, Ms. Tanimoto reported the incident to law enforcement resulting in "pending charges" against him. CP at 26.

Finally, Mr. Barber claimed that Ms. Tanimoto "has been upset that I do not facilitate a call [between her and the children] exactly at 7:30 pm" while the children are in his care. CP at 26. Mr. Barber attested Ms. Tanimoto would "call incessantly and repeatedly" to speak to the children when they were with him, despite him telling her he is "not available" or "busy and will have the kids call her back when they're available." CP at 27. He stated, "[s]he gets her call with the kids. She is just mad that it does not occur on her timeline." CP at 27.

In response to the petition, Ms. Tanimoto admitted to calling Mr. Barber numerous times to speak with the children but claimed it was because Mr. Barber insisted that she call his cell phone to speak to the children and because he constantly changed the call times. She also claimed that "since [her domestic violence protection order] was put in place in December 2023, Mr. Barber has continued to try and paint [her] in a negative light and distort truths in attempts to get [her] protection order removed." CP at 84. Ms. Tanimoto generally denied that she purposely attempted to cause Mr. Barber to violate the order and instead alleged he was willfully violating it.

A hearing on Mr. Barber's petition was held before a superior court commissioner. At the conclusion of the hearing, the commissioner clarified that Mr. Barber's

> petition i[s] [a] request to domestic violence protection order. I know there's been a lot of discussion about anti-harassment and I'm also well aware the Court could pick a different route. But I presume since you filed the paperwork that the primary request is for domestic violence protection order.

Rep. of Proc. (RP) at 21. Mr. Barber's attorney confirmed that Mr. Barber was requesting a domestic violence protection order. The commissioner ruled:

> The Court will make a finding of domestic violence protection order is appropriate. The burden's been met. These people need to stay away from each other.
>
> . . . .
>
> So I'll give you my oral ruling that I'm granting the domestic violence protection order.

RP at 21-22. The court stated, "there's a specific threat of harm here" but indicated it was "less concerned about the phone calls" and was "more concerned about what appears to be entrapment or attempts to infringe upon Mr. Barber's liberty and safety by doing things to put him actively in violation of the other order." RP at 22. The court specifically made a finding of coercive control by Ms. Tanimoto and stated, "taking active efforts to take away someone's freedom is a form of coercive control and domestic violence." RP at 23.

4

The protection order proposed by Mr. Barber had the boxes checked for a "Domestic Violence Protection Order" and for an "Antiharassment Protection Order." CP at 147-48. Counsel for Ms. Tanimoto objected to the order:

> [COUNSEL FOR MS. TANIMOTO] Yes, Your Honor. In section 5B there are two boxes checked. If the Court can clarify, is this a domestic violence protection order or is this an antiharassment protection order?
>
> THE COURT: Let me take a look. Sorry, we have to have three different programs open to read each part of the file. [Counsel for Mr. Barber], while I'm opening that up, did you have any comment regarding that objection?
>
> [COUNSEL FOR MR. BARBER:] Well, Your Honor, there was both conduct asserted. There's previously been a finding of history of domestic violence. So, we believe it's a domestic violence protection order, but it's got the harassment that came along with it.
>
> THE COURT: My recollection was domestic violence, but let me take a look here. Sorry, I should have had all the programs up to begin with. I'm indicating antiharassment order, based on my review of my notes and the prior filings that led to the hearing.

RP at 28-29. The commissioner signed Mr. Barber's proposed order with the boxes checked for both domestic violence and anti-harassment.

Thereafter, Ms. Tanimoto moved for revision of the commissioner's order. A superior court judge denied her motion, concluding that Ms. Tanimoto's actions "constitute coercive control and therefore provide a basis for entry of the Protection Order on the basis of domestic violence." CP at 345. The court also concluded her actions "constitute unlawful harassment and therefore provide a basis for entry of the Protection Order on the basis of domestic violence." CP at 346.

5

In regard to coercive control, the judge found:

5. Ms. Tanimoto obtained a *Protection Order* on December 5, 2023 (against the Petitioner).

6. That same day, Ms. Tanimoto showed up to their children's basketball game and sat directly behind Mr. Barber (who was already there and seated). Mr. Barber got up and moved across the gym. Ms. Tanimoto contacted the police and reported this as a violation of the *Protection Order*.

7. On December 24, 2023, Ms. Tanimoto exited her home (during a visitation exchange) and approached Mr. Barber. She called the police and reported this as a violation of the Protection Order. There is no record that Mr. Barber's actions on that day at the exchange, but for Ms. Tanimoto approaching him, were in violation of the *Protection Order*.

8. These actions constitute coercive control. These actions constitute a pattern of behavior that was used to cause Mr. Barber emotional or psychological harm, and such behavior had the effect of unreasonably interfering with Mr. Barber's free will and personal liberty — which was to sit where he wanted to sit at the children's event since he arrived and chose his location first before Ms. Tanimoto even got to the location and to go to a visitation exchange and position himself in respect of the existing Protection Order.

9. The emotional or psychological harm is established given that Ms. Tanimoto reported Mr. Barber to the police on both occasions causing him to face one or more criminal charges as well as pursuing a motion for contempt related to the children's event which Mr. Barber had to and did successfully defend. It is fair to conclude that Mr. Barber has been and will continue to be hypervigilant and drained by trying to prevent the unpreventable — *i.e.* Ms. Tanimoto setting him up.

10. Notably, the examples of coercive control in RCW 7.105.010(4) do not constitute an exhaustive list. "Examples of coercive control include, *but are not limited to*, engaging in any of the following: . . . ." (Emphasis added.)

CP at 345.

As to unlawful harassment, the judge found:

14. On more than one occasion, Ms. Tanimoto engaged in relentlessly calling Mr. Barber under the guise of trying to talk to the children even when she was told that the children were not available and they would return her call as soon as possible. This is sufficient to establish a course of conduct.

15. When not getting what she wanted, she continued her relentless calling to uninvolved third parties, *i.e.* Mr. Barber's wife (at the time) or his wife's children. She was advised that such calls were not wanted.

16. In considering whether the course of conduct serves any legitimate or lawful purpose, the court has considered RCW 7.105.010(6)(b). The contact was initiated by Ms. Tanimoto only. She was told such relentless calling was unwanted. Ms. Tanimoto's relentless calling cannot be justified by the Parenting Plan that allows her telephone privileges with her children.

17. There is no question that her relentless calling was designed to seriously annoy and harass Mr. Barber and in fact did so and that, Mr. Barber, like any reasonable person similarly situated, *i.e.* a working parent with all the demands that that implies, suffered substantial emotional distress. Ms. Tanimoto failed to regulate her behavior thereby causing Mr. Barber, a working parent who already has sufficient stressors with the demands of daily living, substantial emotional distress. Any reasonable person similarly situated would have also suffered substantial emotional distress.

CP at 346.  In denying Ms. Tanimoto's motion to revise, the judge maintained the protection order issued by the commissioner on July 16, 2024.

Ms. Tanimoto timely appeals.[1]

---

[1] The notice of appeal is not part of the record.

ANALYSIS

Ms. Tanimoto argues the court erred in issuing a protection order against her based on domestic violence and harassment. We disagree.

A superior court judge's review of a commissioner's ruling on revision is de novo. *State v. Wicker*, 105 Wn. App. 428, 432-33, 20 P.3d 1007 (2001). Our review is focused on the actions of the superior court judge because the trial court's order on a motion for revision supersedes any rulings by a commissioner. *In re Marriage of Dodd*, 120 Wn. App. 638, 644, 86 P.3d 801 (2004).

We review the trial court's decision to grant or deny a protection order for abuse of discretion. *Nelson v. Duvall*, 197 Wn. App. 441, 451, 387 P.3d 1158 (2017). An abuse of discretion occurs when the decision is manifestly unreasonable or exercised on untenable grounds. *In re the Vulnerable Adult Pet. of Knight*, 178 Wn. App. 929, 936-37, 317 P.3d 1068 (2014). "'A decision is based on untenable grounds or for untenable reasons if the trial court applies the wrong legal standard or relies on unsupported facts.'" *Nelson*, 197 Wn. App. at 451 (quoting *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 669, 230 P.3d 583 (2010)); *Knight*, 178 Wn. App. at 936. "We defer to the trier of fact on the persuasiveness of the evidence, witness credibility, and conflicting testimony." *Knight*, 178 Wn. App. at 937.

Moreover, this court reviews a trial court's findings of fact to determine whether they are supported by substantial evidence before then assessing whether the findings

8

support the trial court's conclusions of law. *In re Marriage of Rideout*, 150 Wn.2d 337, 350, 77 P.3d 1174 (2003). Substantial evidence exists if it is sufficient to persuade a rational, fair minded person that the finding is true. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 712, 334 P.3d 116 (2014). We treat unchallenged findings of fact as verities on appeal. *Real Carriage Door Co., Inc. ex rel. Rees v. Rees*, 17 Wn. App. 2d 449, 457, 486 P.3d 955 (2021).

Under RCW 7.105.225(1)(a), "[t]he court shall issue a protection order if it finds by a preponderance of the evidence that the petitioner has proved the required criteria." For domestic violence protection orders, the statute requires that "the petitioner has been subjected to domestic violence by the respondent." RCW 7.105.225 (1)(a). For anti-harassment protection orders, the statute requires "that the petitioner has been subject to unlawful harassment by the respondent." RCW 7.105.225(1)(f).

In his petition for a protection order, Mr. Barber primarily complained that Ms. Tanimoto would purposely attempt to put him in violation of the protection order that restrained him. Among other acts, Mr. Barber alleged Ms. Tanimoto would show "up to the kid's [sporting] events and intentionally [sit] right next to" him in order to put him in violation of the protection order. CP at 26. Mr. Barber maintained that he would have to move to another location when Ms. Tanimoto did this. He also alleged that Ms. Tanimoto would call him incessantly when the children resided with him to speak to them at a specific time despite him telling her he was unavailable at that time.

Following a hearing, a commissioner found domestic violence, specifically, coercive control. On revision, a superior court judge found Ms. Tanimoto's actions constituted both coercive control and harassment.

*Coercive Control*

Ms. Tanimoto argues the judge based her order on an erroneous interpretation of coercive control, misinterpreted the evidence in finding coercive control, and reviewed inadequate records of the prior proceedings thereby creating an inadequate record. We disagree with Ms. Tanimoto's assertions.

RCW 7.105.010(4)(a) defines "coercive control" as:

> [A] pattern of behavior that is used to cause another to suffer physical, emotional, or psychological harm, and in purpose or effect unreasonably interferes with a person's free will and personal liberty. In determining whether the interference is unreasonable, the court shall consider the context and impact of the pattern of behavior from the perspective of a similarly situated person.

The statute also contains examples of coercive control but indicates the list "include[s], but [is] not limited to" the enumerated examples. RCW 7.105.010(4)(a).

The judge found Ms. Tanimoto's actions constituted coercive control because her "pattern of behavior" was used to "cause Mr. Barber emotional or psychological harm," and that behavior "unreasonably interfered with Mr. Barber's free will and personal liberty." CP at 345. The judge also noted that the examples of coercive control in RCW 7.105.010(4) "do not constitute an exhaustive list." CP at 345.

10

Ms. Tanimoto urges us to interpret RCW 7.105.010(4) but fails to explain how the statute is ambiguous. Instead, Ms. Tanimoto focuses on the judge's alleged failure to apply the proper legal standard. In particular, she argues the judge's findings failed to satisfy the definition of coercive control as contained in the statute. Notably, Ms. Tanimoto fails to assign error to any of the judge's findings. Thus, the findings are verities on appeal.

Ms. Tanimoto first argues the court did not fully evaluate her alleged actions and did not ascertain whether Mr. Barber suffered harm but instead presumed he was harmed. This argument is unavailing. The court explicitly found "emotional or psychological harm is established given that Ms. Tanimoto reported Mr. Barber to the police on both occasions causing him to face one or more criminal charges as well as pursuing a motion for contempt . . . which Mr. Barber had to and did successfully defend." CP at 345. Ms. Tanimoto argues Mr. Barber should have been required to make a specific offer of proof regarding the harm he suffered. An offer of proof was unnecessary because Mr. Barber's declaration supports the judge's finding that he was harmed.

Ms. Tanimoto next argues the court did not evaluate whether her actions were made in good faith and therefore did not constitute coercive control. RCW 7.105.010(4)(b). This argument is unpersuasive. The judge found "Ms. Tanimoto [was] setting [Mr. Barber] up" to be in violation of the protection order causing Mr. Barber "to

11

be hypervigilant and drained by trying to prevent the unpreventable." CP at 345. A lack of good faith inheres in these findings.

Finally, Ms. Tanimoto argues the court erred in issuing the protection order because Mr. Barber's evidence was "of dubious value and contradicted by much of the evidence presented by [Ms. Tanimoto]." Br. of Appellant at 27. We disagree as we do not reweigh evidence or credibility on appeal. *Knight*, 178 Wn. App. at 937. Ms. Tanimoto also argues the record before the judge was minimal and therefore insufficient for her to make findings necessary to support the issuance of a protection order. Contrary to this argument, the judge indicated she had reviewed the same record that was before the commissioner, as well as Ms. Tanimoto's motion for revision and Mr. Barber's memorandum in opposition to revision. Ms. Tanimoto fails to explain how this record was insufficient aside from urging us to find Mr. Barber's declarations unconvincing.

The judge did not abuse her discretion in granting a protection order against Ms. Tanimoto based on a finding of domestic violence, specifically, coercive control.

*Harassment*

Similar to her arguments above, Ms. Tanimoto asserts the judge based her order on an erroneous interpretation of harassment and misinterpreted the evidence in finding unlawful harassment. We disagree.

12

RCW 7.105.010(37) defines "harassment" as:

(a) A knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, harasses, or is detrimental to such person, and that serves no legitimate or lawful purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner; or

(b) A single act of violence or threat of violence directed at a specific person that seriously alarms, annoys, harasses, or is detrimental to such person, and that serves no legitimate or lawful purpose, which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner. A single threat of violence must include: (i) A malicious and intentional threat as described in RCW 9A.36.080(1)(c); or (ii) the presence of a firearm or other weapon.

Regarding unlawful harassment, the judge found that on "more than one occasion, Ms. Tanimoto engaged in relentlessly calling Mr. Barber under the guise of trying to talk to the children" even when she was told they were unavailable. CP at 346. The judge also found that Ms. Tanimoto "continued her relentless calling" when she did not get what she wanted, even after being "advised that such calls were not wanted." CP at 346. The judge found that Ms. Tanimoto's "relentless calling" was not justified by the parenting plan that allowed her contact with her children and that it was instead "designed to seriously annoy and harass Mr. Barber" therefore constituting unlawful harassment and providing an additional basis for entry of "the Protection Order." CP at 346.

Ms. Tanimoto first argues the judge's order is based on an erroneous interpretation of unlawful harassment. Again, Ms. Tanimoto does not explain how the judge misinterpreted the statute. Instead, Ms. Tanimoto argues the commissioner failed to inquire as to whether her conduct was lawful, and the judge failed to consider Mr. Barber's "responsibility in initiating repeated phone calls." Br. of Appellant at 21. Ms. Tanimoto points to the court-ordered parenting plan that permits her contact with their children while they are in Mr. Barber's care and argues the protection order based on unlawful harassment interferes with her right to free speech[2] and her right to contact her children.[3] Again, Ms. Tanimoto does not assign error to any of the judge's findings. In any event, Ms. Tanimoto's argument is unpersuasive.

First, whether the commissioner inquired about whether Ms. Tanimoto's conduct was lawful is irrelevant because the superior court judge reviews the record on a motion for revision de novo. Second, the judge addressed whether Mr. Barber had any responsibility for the repeated phone calls and implicitly found he did not. CP at 346

---

[2] The protection order does not implicate Ms. Tanimoto's freedom of speech. Rather, it limits her conduct—i.e. repeatedly calling Mr. Barber. *See In re Marriage of Suggs*, 152 Wn.2d 74, 79-80, 93 P.3d 161 (2004).

[3] For this argument and her similar argument pertaining to coercive control, Ms. Tanimoto asserts we should grant review "de novo under the appropriate legal standard." Br. of Appellant at 17. She cites no legal authority supporting the proposition that we could or should undertake de novo review. Thus, we decline to address this argument. *Palmer v. Jensen*, 81 Wn. App. 148, 153, 913 P.3d 413 (1996) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").

("The contact was initiated by Ms. Tanimoto only."). Third, though Ms. Tanimoto mentions that "Washington courts have wrestled with questions of whether [individuals] have a legal right to be free from prior restraints before upholding" anti-harassment orders, she does not explain how her constitutional rights in particular are implicated or violated. Br. of Appellant at 22. To the extent Ms. Tanimoto argues her actions were lawful, the judge found otherwise, and she fails to challenge this finding. CP at 346 ("In considering whether the course of conduct serves any legitimate or lawful purpose . . . Ms. Tanimoto's relentless calling cannot be justified by the Parenting Plan that allows her telephone privileges with her children."). For these reasons, Ms. Tanimoto's arguments fail.

Finally, Ms. Tanimoto argues the judge misinterpreted the evidence before her in finding unlawful harassment. Like her similar argument regarding the judge's finding of coercive control, Ms. Tanimoto asks this court to reweigh evidence which we are precluded from doing. She contends the "[r]evision court in this matter relied upon inferences to support their findings where actual offers of proof should have been required." Br. of Appellant at 35. Contrary to her argument, the judge relied on the same evidence that was before the commissioner, Ms. Tanimoto's motion for revision, and Mr. Barber's memorandum in opposition to revision. This evidence was more puissant than an offer of proof and is sufficient to support issuance of a protection order.

No. 40742-0-III
*In re the Marriage of Barber & Tanimoto*

Further, because Ms. Tanimoto again fails to challenge the court's findings she alleges

are unsupported, the findings are verities.

The judge did not abuse her discretion in granting a protection order based on

harassment.

Affirmed.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Staab, A.C.J.

_____
Fearing, J.

16