# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| COLIN HOFMANN, | No. 86147-6-I |
| Respondent/Cross-Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| KAREN KONZ (formerly Hofmann), | |
| Appellant/Cross-Respondent. | |

FELDMAN, J. — This appeal raises numerous issues regarding the trial court's modification of a parenting plan based on Colin Hofmann's allegation that his former spouse, Karen Konz, has engaged in abusive use of conflict that creates a danger of serious damage to the psychological development of their two children, C.H. and K.H. Konz appeals the modified parenting plan and associated rulings, including a restraining order that broadly prohibits her from communicating with numerous third parties regarding her children. Hofmann cross-appeals the trial court's ruling denying his motion for attorney fees based on Konz's alleged intransigence. We vacate and remand the parenting plan and restraining order with directions that they be modified to comply with our Supreme Court's decision in *In re Marriage of Suggs*, 152 Wn.2d 74, 93 P.3d 161 (2004), which prohibits the use of such orders to restrain lawful speech. In all other respects, we affirm.

I

Hofmann and Konz married in 2008 and divorced in 2019. When Hofmann and Konz divorced, the trial court entered findings that Konz had engaged in conduct, including abusive use of conflict, that was "contrary to the best interests of the children." Based on such findings, the court entered a five-phase parenting plan that started with supervised visitation and then gradually increased Konz's time with her children if she complied with certain directives.

Hofmann filed a petition to modify the parenting plan in 2021. He alleged that although the existing parenting plan "was designed to protect the children from the abusive use of conflict . . . [t]he conflict has since returned to the levels that it was at the time of trial" and included dozens of unfounded Child Protective Services (CPS) referrals, police interventions, and disruptions to the effectiveness of the children's therapy based on a mistaken assertion that "their father is abusive."

The trial court held an adequate-cause hearing and found there was adequate cause to proceed to trial on Hofmann's petition to modify the parenting plan. The court appointed a Guardian ad Litem (GAL) to investigate the "[o]ngoing conflict between the parties that is damaging to the children," "[w]hether and to what extent [the] mother's residential time should be reinstated," and any other issues regarding the safety of the children.

Having found adequate cause to proceed to trial, the court conducted a 10-day trial that included testimony of over twenty witnesses. Following trial, the

trial court reduced Konz's contact with her children under RCW 26.09.260(4),[1] explaining, "[t]o protect the children, the court will limit the parenting time and participation of the parent who already has less than half of the parenting time with the children." The court entered nearly 50 pages of findings supporting its order and further explained: "Because the court does not have evidence of what [Konz] is doing or saying directly to the children, the court finds that an abusive use of conflict finding is more appropriate than a finding of a pattern of emotional abuse."

Based on the above-referenced findings, the trial court entered a modified parenting plan that abandoned the "phase" approach of the prior parenting plan and established that the children would live with Hofmann the majority of the time and with Konz every other week from Thursday to Monday. The court explained:

> Under the previous parenting plan, the court anticipated that the children would eventually spend equal residential time with the two parents. In light of the court's findings regarding the mother's abusive use of conflict and the ongoing harm to the children, modification of that provision is warranted such that the schedule will not advance to an equal residential schedule as anticipated.

Reiterating this finding, the court concluded, "[t]he finding that Dr. Konz has engaged in the abusive use of conflict is the basis for . . . leaving the children in Mr. Hofmann's primary residential care."

Also relevant here, the trial court entered a restraining order that broadly prohibits Konz from having contact with numerous persons associated with the children's school or activities. These limitations, too, were based on the court's

---

[1] RCW 26.09.260(4) provides: "The court may reduce or restrict contact between the child and the parent with whom the child does not reside a majority of the time if it finds that the reduction or restriction would serve and protect the best interests of the child using the criteria in RCW 26.09.191." The referenced criteria include abusive use of conflict. *See* RCW 26.09.191(3)(e).

finding that Konz had engaged in abusive use of conflict. The court also entered a child support order based on changes in the children's expenses since the first parenting plan was entered. Regarding attorney fees, the court denied Hofmann's request for fees based on Konz's alleged intransigence in the parenting plan modification trial, but granted Hofmann fees totaling $8,137.50 based on Konz's failure to disclose her financial situation in the child support proceedings as required by King County Local Family Law Rule (KCLFLR) 10. This timely appeal and cross-appeal followed.

II

Our review of the trial court's rulings is largely deferential. "[T]rial courts are given broad discretion in matters dealing with the welfare of children." *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). A trial court's order modifying a parenting plan is reviewed for abuse of discretion. *In re Marriage of Kinnan*, 131 Wn. App. 738, 746, 129 P.3d 807 (2006). An abuse of discretion occurs when a decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012).

On review of a decision regarding modification of a parenting plan, the trial court's findings of fact will be upheld so long as "they are supported by substantial evidence." *In re Marriage of Hansen*, 81 Wn. App. 494, 498, 914 P.2d 799 (1996). Substantial evidence is "'defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true.'" *In re Marriage of DeVogel*, 22

Wn. App. 2d 39, 48, 509 P.3d 832 (2022) (quoting *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)).

The party challenging the findings of fact has the burden of demonstrating that substantial evidence does not exist. *In re Marriage of Grigsby*, 112 Wn. App. 1, 9, 57 P.3d 1166 (2002). This court does not reweigh the evidence or disturb a trial court's determination regarding the credibility of witnesses. *In re Marriage of Black*, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). Additionally, "[a] reviewing court may not find abuse of discretion simply because it would have decided the case differently—it must be convinced that no reasonable person would take the view adopted by the trial court." *Gilmore v. Jefferson County. Pub. Transp. Benefit Area*, 190 Wn.2d 483, 494, 415 P.3d 212 (2018) (internal quotation marks omitted).

A

Konz argues the trial court abused its discretion in determining there was adequate cause to hear Hofmann's petition to modify the parenting plan. We disagree.

Under RCW 26.09.270, "The court shall deny the motion [to modify] unless it finds that adequate cause for hearing the motion is established by the affidavits, in which case it shall set a date for hearing on an order to show cause why the requested order or modification should not be granted." "[T]o overcome the presumption against modification, the moving party must set forth facts and provide supporting evidence—not self-serving or conclusory statements—to establish adequate cause to schedule a hearing on the petition to modify." *In re Marriage of MacLaren*, 8 Wn. App. 2d 751, 774, 440 P.3d 1055 (2019). We review

a trial court's adequate cause determination for abuse of discretion because "a trial judge generally evaluates fact based domestic relations issues more frequently than an appellate judge and a trial judge's day-to-day experience warrants deference upon review." *In re Parentage of Jannot,* 149 Wn.2d 123, 127, 65 P.3d 664 (2003).

Applying these legal principles here, the trial court did not abuse its discretion in determining there was adequate cause to schedule a hearing on the petition to modify based on evidence of abusive use of conflict under RCW 26.09.260(4) and RCW 26.09.191(3)(e) (quoted in footnote 1 above). Hofmann submitted a detailed declaration explaining that Konz had resumed the disruptive behavior characteristic of the time prior to the first parenting plan, with increasing abusive use of conflict as she received greater access to the children through the plan's phased approach. His declaration described a pattern of disruptive, traumatizing, and unfounded CPS referrals supported by Konz. And it included an image of Konz's social media implying her children were survivors of sexual abuse and that she believed them.

Hofmann also furnished specific examples of occasions where Konz exploited the phased approach to increase conflict by failing to return the children to him at the scheduled time and failing to notify him of their location. He described the disruption and harm the children experienced when responding to police interviews resulting from unfounded child abuse allegations supported by Konz. He also described the children's behavioral issues after Konz abused loopholes in the residential schedule to keep the children longer than authorized,

as well as the increasing conflict between Hofmann and the children because of Konz's emotionally manipulative tactics. Because Hofmann set forth facts and provided supporting evidence that reducing or restricting contact between Konz and her children would serve and protect the best interests of the children (as required by RCW 26.09.260(4)), the trial court did not abuse its discretion in finding adequate cause to proceed to a trial on modification.

Konz asserts that the trial court's adequate cause finding is flawed because the trial court purportedly found that "both parties" had established adequate cause yet only Hofmann had submitted an affidavit supporting modification. Her argument is premised on the following statement of the trial court:

> I want to be clear that when we talk about this major modification, it is a major modification going both ways. This parenting plan is not working for these children and it is possible that at the end of the day [a GAL] will make recommendations that are quite different [than the current parenting plan]. There is adequate cause for all of that. I am finding that going forward.

Contrary to Konz's assertion, the trial court's statement merely reflected its intention to fashion a parenting plan in the best interest of the children, not one that follows either parent's preferences, if modification was found necessary. As noted above, an affidavit or declaration is required of the petitioner, and Hofmann filed one here. None was required from Konz because Konz did not file a petition.

Konz next argues that the trial court failed to properly limit its inquiry to the environment Hofmann provided to their children in considering whether there was adequate cause to hear Hofmann's petition to modify the parenting plan at trial. Her argument is based on RCW 26.09.260(2)(c), which provides:

> [T]he court shall retain the residential schedule established by the decree or parenting plan unless . . . [t]he child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child . . . .

But as discussed above, the court modified the parenting plan based on its findings of abusive use of conflict under RCW 26.09.260(4), which does not expressly reference the child's "environment" and instead focuses on the "best interests of the child using the criteria in RCW 26.09.191. *See* footnote 1 above, quoting RCW 26.09.260(4). Because the trial court was not required to restrict its consideration to the children's "environment" as Konz argues, it did not so abuse its discretion.[2]

Lastly, Konz argues that the trial court abused its discretion in finding adequate cause because the circumstances that formed the basis of the finding were "known and anticipated at the time" of the first parenting plan. Her argument is not persuasive. This argument is based on RCW 26.09.260(1), which states:

> Except as otherwise provided in subsections (4), (5), (6), (8), and (10) of this section, the court shall not modify a prior custody decree or a parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child.

Because the trial court's adequate case finding is supported by evidence of abusive use of conflict under the criteria referenced RCW 26.09.260(4), which is expressly excluded by the "except as otherwise provided" language in RCW

---

[2] Konz also advances the same challenge to the modification of the parenting plan as she does to the adequate cause finding: that the court should have limited its consideration of the children's "present environment" to only Hofmann's "custodial environment" since the children primarily resided with him. Here too, because the modification is based on RCW 26.09.260(4), not RCW 26.09.260(1), Konz's argument fails.

26.09.260(1), Konz's reliance on the timing provision in RCW 26.09.260(1) necessarily fails.

B

Konz next challenges the modification of the parenting plan following trial. None of her arguments are persuasive.

1

Konz first argues the trial court improperly relied on hearsay in CPS reports in finding she engaged in abusive use of conflict. We conclude Konz waived this argument.

A "hearsay objection is waived unless preserved through objection." *State v. Townsend*, 2 Wn. App. 2d 434, 442, 409 P.3d 1094 (2018) (citing *State v. Smith*, 155 Wn.2d 496, 501, 120 P.3d 559 (2005)). The CPS reports, admitted as Exhibits 57 and 59, show numerous interventions based on allegations of abuse. Not only did Konz fail to object to these exhibits on hearsay grounds, she was examined on the evidence without objection. A social worker and CPS supervisor also were examined on the evidence without objection. Konz's counsel also cross-examined a CPS supervisor on Exhibit 59. And Konz relied on the same CPS reports in her motion for a restraining order against Hofmann. As such, Konz failed to properly preserve—and thus waived—the argument she now asserts on appeal.

Konz's attempt to show she objected to the exhibits at trial easily fails. Long after Exhibits 57 and 59 had been admitted without objection and multiple witnesses had been examined on them, the court heard argument on a pending motion in limine regarding Exhibit 67, which is a GAL report containing notes from

a therapist. During argument on Exhibit 67, Konz's counsel argued, "I would also point out . . . Exhibits . . . 59 and 57 . . . I'm concerned about the court seeing a bunch of hearsay." The trial court responded:

> [Y]ou both agreed to the admission of those exhibits, and I've admitted them . . . and, frankly, there's some that each of you may not be so thrilled with, in terms of hearsay statements by CPS workers and collaterals. But I think that's in, I'm not inclined to un-admit an exhibit that you both agreed to admit and I admitted, and now we've relied on for several witnesses. I understood this motion to be very specific [to Exhibit 67]. And at least right now, I'm not considering a broader motion [regarding exhibits 57 and 59].

Konz's counsel then clarified, "Your Honor, my concern is specifically Exhibit 67." *Id.* Because hearsay objections are waived if they are not raised at trial and Konz failed to do so here, her hearsay argument is waived.

2

Konz next argues that the trial court's abusive use of conflict finding is not supported by evidence that she "engaged in a pattern of actions or behaviors that harmed the children's emotional and psychological well-being." We disagree.

Under RCW 26.09.260(4), which incorporates the criteria in RCW 26.09.191, the court may reduce or restrict contact between the child and the parent with whom the child does not reside the majority of the time based on "[t]he abusive use of conflict by the parent [that] creates the danger of serious damage to the child's psychological development." RCW 26.09.191(3)(e). A finding of abusive use of conflict under RCW 26.09.191(3) requires "more than the normal distress suffered by a child because of travel, infrequent contact of a parent, or other hardships which predictably result from a dissolution of marriage." *In re Marriage of Watson*, 132 Wn. App. 222, 233, 130 P.3d 915 (2006) (quoting *In re*

- 10 -

*Marriage of Littlefield*, 133 Wn.2d 39, 55, 940 P.2d 1362 (1997)). In addition, "a finding under RCW 26.09.191(3) must be supported by substantial evidence that the parent's 'involvement or conduct' caused the restricting factor" justifying the limitation in the plan. *Id.*

Here, the trial court found the harm attributed to Konz's abusive use of conflict includes: (1) the children's "inducement to allege [unfounded] abuse," which "can lead to unhealthy consequences and psychological challenges for a child to learn to make distorted statements of grave consequence as a means to an end"; (2) fear of abandonment based on "conditional love from mother," Konz's relocation away from the children, her failure to fully participate in supervised visits, her unequal treatment of the children's birthdays, and her approval of their adoption of her surname; (3) undermining the children's relationship with Hofmann by characterizing his parenting decisions as abusive and indicative that the children are unwanted, which is "extraordinarily painful and can further erode positive feelings in connection with that parent"; (4) undermining the children's trust in important adult relationships, resulting in their "ability to see the truth and trust themselves becom[ing] distorted"; and (5) emotional control of the children that "will likely cause children to doubt their own reality and lead to pervasive, harmful relationship patterns in the future and harm their ability to have a connection with their father."

Substantial evidence supports the trial court's findings regarding the foregoing categories of harm. Before modifying the parenting plan, the court heard testimony from the parties and expert testimony. The findings are largely based

on the testimony of Dr. Stephanie Wolf, who explained how the foregoing conduct can result in psychological harm. The trial court also considered evidence of an increase and escalation of harm as a result of the existing parenting plan. Because substantial evidence supports the findings that Konz's abusive use of conflict harmed the children, we do not disturb the findings on appeal.

Konz nevertheless argues that some of the evidence regarding the harm identified by the trial court is insufficient because there is also contrary evidence. This argument ignores the applicable standard of review. "So long as substantial evidence supports the finding, it does not matter that other evidence may contradict it. This is because credibility determinations are left to the trier of fact and are not subject to review." *In re Marriage of Burrill*, 113 Wn. App. 863, 868, 56 P.3d 993 (2002). Konz's argument that contradictory evidence exists is therefore unavailing*.* Moreover, many of the trial court's findings are unchallenged, rendering them "verities on appeal," *DeVogel*, 22 Wn. App. 2d at 50, and these unchallenged findings separately support the trial court's conclusions.

3

Konz next claims the trial court's abusive use of conflict finding "punishes" her for the "good faith reporting of others." That is not so.

RCW 26.09.191(3)(e) states that "[a] report made in good faith to law enforcement, a medical professional, or child protective services of sexual, physical, or mental abuse of a child shall not constitute a basis for a finding of abusive use of conflict." But there is no evidence that the trial court attributed a good faith report made by others to Konz and Konz cites to none. To the contrary,

the trial court expressly indicated in its final order that the unfounded reports themselves were not the basis of the abusive use of conflict finding:

> While there is no evidence that Dr. Konz has directly caused the CPS reports, it is clear that her entrenched belief system and the way she – either intentionally or unintentionally – reinforces the children's distorted claims is part of the dynamic and puts the children in a very difficult and psychologically harmful position in terms of conflicted loyalties. Dori Guterson's testimony was credible that the children show increased anxiety when they are having more time with the mother . . . . While no one can know what Dr. Konz communicates to the children when she is alone with them, it is clear, as it was at the last trial, that she has no insight about how her beliefs impact the children and very little judgment about appropriate boundaries. As one minor example, the fact that Dr. Konz has viewed these two trials as something of a spectator event bringing multiple neighbors, employees, parents of the children's friends and community members to observe shows a lack of insight about the impact of this case on the children.

Because Konz does not explain how the trial court abused its discretion as to the above analysis, her argument fails.

4

Konz also argues the trial court overlooked, or failed to consider, two of her arguments. First, Konz argues the trial court "fail[ed] to consider" her evidence supporting an abusive use of conflict finding against Hofmann. In support of this argument, Konz cites to her own trial brief, which asserted Hofmann's relocation of the children from the marital home to a new residence, delays in her supervised visits due to Hofmann's concerns with the supervisors, and allegedly referring to his children as "liars" constituted sufficient evidence for an abusive use of conflict finding. The argument is meritless.

Assuming for the sake of argument that Hofmann's conduct as alleged by Konz was sufficient to substantiate an abusive use of conflict finding, Konz does

not explain how the trial court "failed to consider" her arguments to that effect. To the contrary, the trial court reviewed evidence pertaining to: (1) Hofmann's sale of the marital home in Seattle and subsequent relocation due to a toxic social environment attributed to Konz's characterization of Hofmann as an abuser; (2) Hofmann's criticism of supervised visit supervisors; and (3) Konz's assertion that the children were characterized by Hofmann or his family as "liars." This argument is unavailing.

Finally, Konz claims the trial court also failed to consider her cross-petition for modification to the parenting plan. But Konz fails to present sufficient factual support, argument, analysis, or authority to support this assertion. The argument is therefore waived. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). In any event, her contention is contrary to the record, as the trial court explicitly noted, "[e]ach parent asks, in essence that the children reside solely with them" and "[t]he mother asks that the children see the father only if they want to (which she clearly believes they will not)" in its overall findings at the conclusion of trial. This argument, like the others, easily fails.

C

Turning to the trial court's restraining order, Konz argues the trial court abused its discretion by entering the order because a restraining order was not "necessary" within the meaning of the statute authorizing restraining orders in marriage dissolution cases. She also claims that the no-contact provisions in the restraining order and parenting plan are impermissibly broad. We disagree with the former argument but agree with the latter.

Courts have broad statutory and equitable authority to impose and fashion restraining orders in dissolution proceedings. *Blackmon v. Blackmon*, 155 Wn. App. 715, 721-22, 230 P.3d 233 (2010). In dissolution cases, RCW 26.09.050(1) provides, "the court shall . . . make provision for a parenting plan for any minor child of the marriage . . . make provision for the support of any child of the marriage . . . [and] make provision for any necessary continuing restraining orders . . . ." A trial court's decision to impose a restraining order is reviewed for abuse of discretion. *In re Marriage of Freeman*, 169 Wn.2d 664, 671, 239 P.3d 557 (2010). Here, the restraining order is amply supported by the trial court's detailed findings in the modification trial. As discussed in section II.B above, the court's findings relating to Konz's abusive use of conflict are extensive and supported by substantial evidence. Thus, if the only issue here were necessity, we would affirm.

But Konz also claims various provisions in the restraining order and parenting plan are unconstitutional under the First Amendment to the United States Constitution, and case law supports that argument. Our Supreme Court's opinion in *Suggs* is directly on point. The trial court there found that Suggs harassed her former husband and then permanently restrained her from "knowingly and willfully making invalid and unsubstantiated allegations or complaints to third parties which are designed for the purpose of annoying, harassing, vexing, or otherwise harming [him] . . . for no lawful purpose." 152 Wn.2d at 78-79. On review, our Supreme Court held that the order was unconstitutional because it "lacks the specificity demanded by the United States Supreme Court for prior restraint on unprotected speech." *Id.* at 84. The court explained, "Indefinite wording is impermissible when

the Court has repeatedly stated that the line between protected and unprotected speech is very fine. Such wording leaves us unable to ascertain what speech the order actually prohibits." *Id.*

*In re Marriage of Meredith,* 148 Wn. App. 887, 201 P.3d 1056 (2009), also is instructive here. In *Meredith,* the trial court required Meredith to obtain prior court approval before contacting any agency about the immigration status of his former spouse. *Id.* at 895. Although the order appropriately prohibited Meredith from making harassing and libelous claims, it also prohibited him from "contacting any agency" without prior court approval and "without regard to whether the contact involves protected or unprotected speech." *Id*. at 898 (internal quotation marks omitted). Because the order was thus not "specifically crafted to prohibit only unprotected speech," it was an unconstitutional prior restraint. *Id.*

Here, the restrictions placed on Konz are even broader than the ones found unconstitutional in *Suggs* and *Meredith* as there is no attempt at differentiation between unprotected speech and permissible speech. The trial court instead ordered that Konz have "no contact" with (1) "[a]ny person associated with the children's schools" except for "incidental contact (a brief greeting)," (2) "[a]ny person associated with the children's camps, sports teams and/or other activities" except "incidental contact (a brief greeting and discussion of the event or activity)," or (3) "[a]ny of the children's healthcare providers." In addition, the restraining order requires that, except as permitted by the parenting plan, Konz is to have no direct or indirect contact with the children or persons associated with the children's

schools or activities.[3] And like *Suggs*, the restrictions pertain to third parties broadly. Such restrictions are impermissibly broad.

Hofmann nevertheless claims "Konz has the right to speak generally as she wishes." If that is so, it is not apparent from the trial court's orders, which, as noted above, broadly prohibit contact with third parties except for "incidental contact." The most incidental speech the parenting plan permits is described in the prohibition on Konz contacting any person associated with the children's activities, which allows "a brief greeting and discussion of the event or activity at sports games or performances which Dr. Konz is permitted to attend only when they fall during her residential time." If Konz is in fact permitted to speak "generally as she wishes," as Hofmann claims, clarification from the trial court is necessary.

To be sure, the trial court can properly restrain Konz from making defamatory or harassing statements about Hofmann. *See In re Marriage of Olson*, 69 Wn. App. 621, 630, 850 P.2d 527 (1993). Its provisions restricting contact with the children outside of contact provided in the plan and with Hofmann are also permissible. But the provisions in the parenting plan and restraining order pertaining to third parties are not carefully crafted to distinguish between protected and unprotected speech so as to prohibit only unprotected speech. We therefore vacate those provisions and remand the parenting plan and restraining order with directions that they be modified to comply with *Suggs* as explicated herein.

---

[3] Konz does not challenge on constitutional grounds the restraining order's requirement that, except as allowed by the parenting plan, she remain 1000 feet away from Hofmann and the children's home, workplace, school, and activities. Hofmann's reliance on *State v. Noah*, which examined the constitutionality of an antiharassment order imposing a 300-foot "no contact" zone, is thus misplaced. 103 Wn. App. 29, 9 P.3d 858 (2000).

D

Konz also claims the trial court abused its discretion by entering restrictions in the parenting plan on travel outside of King County without explicit findings "that a parent's conduct justifies the imposition of such restrictions." We disagree.

Konz maintains a residence in Seattle above her veterinary practice where the children may stay with her. She also has property in Republic, Washington where the record indicates she resides. She resides there, as the trial court noted, "even though her veterinary clinic continues to be sited in Seattle and requires her to commute the five+ hour drive each way to Seattle and back every week." Under the original parenting plan, the children were permitted to visit Konz at her residence in Republic every other weekend. But following a status conference pertaining to "phase 2" of the parenting plan, the trial court ruled:

> The children appear to have been adversely impacted by spending time in Republic every other weekend during the school year. Despite the mother's insistence that they do fine with the lengthy car ride for a two-day weekend, the evidence suggests that they are quite fatigued, which contributes to the challenges with transitions and behavior.

The trial court also found:

> Some of Karen Konz's actions, such as where she lives . . . are likely to either raise concerns in the children that they are being abandoned by their mother or at risk of losing her, or that their father is keeping them from her. The children's concern about losing their mother, to whom they are clearly attached, is a strong motivator for them and may well be what is motivating their statements to third parties which lead to the CPS reports . . . . This relocation had the potential to instill worry in a child and clearly created a situation where shared parenting was not possible and may have reinforced a notion in the children that they have to choose between parents and/or choose between a life in Republic with their mother and their beloved animals and a life with their father in the Seattle area.

In this respect, Konz's relocation to Republic was an established aspect of her abusive use of conflict and directly contributed to the harm the children experienced.

Given these findings, the trial court fashioned a modified parenting plan addressing the negative impact of traveling to Republic every other weekend by allowing travel to Republic on long weekends up to once a month. The court ruled:

> The children are scheduled to live with *Colin Hofmann*, except when they are scheduled to live with *Karen Konz:* Every other week from Thursday after school . . . to Monday morning return to school . . . The children shall reside in King County for the school schedule except that the mother may take them to Republic or other locations outside of King County up to one weekend per month where the weekend consists of more than two overnights because of a holiday, vacation or school release day adjacent to the weekend . . . For months where the mother has a longer break such as Thanksgiving, winter, midwinter or spring and is spending that time outside of King County, the remaining weekends shall be spent in King County.

Contrary to Konz's argument, the restriction is well-reasoned and supported by substantial evidence. Accordingly, there was no abuse its discretion.

Konz claims a court may impose travel restrictions only if it makes explicit findings regarding the statutory grounds for the imposition of travel restrictions. In support of her argument, Konz cites RCW 26.09.191(3)(g), which states: "A parent's involvement or conduct may have an adverse effect on the child's best interests, and the court may preclude or limit any provisions of the parenting plan, if any of the following factors exist . . . (g) Such other factors or conduct as the court expressly finds adverse to the best interests of the child." Because the trial court's restrictions were based on RCW 26.09.191(3)(e), no express findings

- 19 -

pursuant to RCW 26.09.191(3)(g) are required here. The trial court did not abuse its discretion in imposing the travel restriction in the parenting plan.

E

Konz also challenges the trial court's order denying her motion for reconsideration following trial. The trial court explained the reasons it denied her motion as follows:

> after multiple days of testimony from 29 witnesses and review of the many admitted exhibits, [the court] has already addressed the issues raised by Dr. Konz and finds no basis to change its findings, conclusions and order. Dr. Konz presents no new evidence not known to the court or that could not have been presented previously.

We review "a trial court's denial of a motion for reconsideration and its decision to consider new or additional evidence presented with the motion to determine if the trial court's decision is manifestly unreasonable or based on untenable grounds." *Martini v. Post*, 178 Wn. App. 153, 161, 313 P.3d 473 (2013).

Although Konz's motion for reconsideration cited several possible grounds for reconsideration, her argument on appeal narrowly focuses on the following finding:

> the information [Konz] chooses to share such as the Harborview Sexual Assault Center records [indicate] that she believes the most extreme claims about frequent [abuse] . . . [e]ither Dr. Konz actually believes those claims, or she is using them in a horribly manipulative way. Either way, it is damaging to the children. This court previously found, and finds again, that that is not objective reality and has not happened.

Her reconsideration motion included a voicemail transcript indicating a person at Woodinville Pediatrics sought records from Harborview Medical Center and asked Konz to provide a signed release of information on June 28, 2021. She argues

- 20 -

such evidence proves the trial court's finding relating to abusive use of conflict based on the release of medical records is flawed.

Konz does not explain how the referenced evidence is contrary to the trial court's finding that she chose to share information across medical providers in an abusive manner. Nor does she articulate how a voicemail from 2021 could not have been discovered and used at the trial in 2023 or how such evidence addresses any of the grounds for reconsideration. Because CR 59(a) authorizes reconsideration only where recognized grounds are met, and since "this court does not review issues not argued, briefed, or supported with citation to authority" (*Christian v. Tohmeh*, 191 Wn. App. 709, 727-28, 366 P.3d 16 (2015) (citing RAP 10.3(a)(6)), we affirm the trial court's denial of reconsideration.

F

Next, Konz asks this Court to vacate the child support order. She notes that the order is based on the trial court's decision to make Hofmann the primary residential parent, but fails to identify an error or make a legal argument associated with the ruling. Nor does she challenge the trial court's decision designating Hofmann as the children's primary residential parent. Instead, Konz asserts, "if this court reverses the parenting plan as requested, the child support order must also be reversed." As discussed above, where a party advances no legal argument or cites no authority in support of an argument, we need not consider the issue. In any event, because we do not reverse the parenting plan's residential provisions, no reversal of the child support order on those grounds is necessary.

The child support order also reserved the matter of attorney fees. In a subsequent order following a hearing, the trial court found Konz failed to disclose her income in violation of KCLFLR 10, which relates to required financial disclosures in child support proceedings.[4] Konz does not challenge the trial court's finding. She argues the order "merely punishes [her] for [Hofmann's] failure to substantiate his claims of [her] higher income" and should therefore be vacated. But it is not Hofmann's burden to establish Konz's income. Having identified no error, the child support order and associated award of attorney fees is affirmed.

G

Konz argues the case should be assigned to a new judge if it is remanded. We disagree.

A matter may be reassigned to a different judge on remand where the trial court "failed to remain neutral." *Black*, 188 Wn.2d at 137. Here, Konz fails to show that the trial court failed in that regard. Instead, she contends "multiple errors" were committed by the trial judge, asserts "a court should not become significantly involved in parenting decisions," and claims the court was "unduly influenced by [Hofmann's] speculative allegations." But "legal errors alone do not warrant reassignment." *State v. McEnroe*, 181 Wn.2d 375, 388, 333 P.3d 402 (2014). And while "reassignment is appropriate to avoid the appearance of unfairness or bias,"

---

[4] The record establishes that Konz is a business owner and maintains bank accounts and credit card accounts. KCLFLR 10(b) states in relevant part: "(3) If either party owns an interest of 5% or more in a corporation, partnership or other entity that generates its own tax return, the complete tax return for each such corporation, partnership or other entity for the prior two years; . . . (4) Parties who file a financial declaration shall also file the following supporting documents: All statements related to accounts in financial institutions in which the parties have or had an interest during the last six (6) months. 'Financial institutions' includes banks, credit unions, mutual fund companies, and brokerages."

*Shrauner v. Olsen,* 16 Wn. App. 2d 384, 421, 483 P.3d 815 (2020), Konz fails to establish a claim as to the appearance of bias in any of the proceedings. We therefore reject Konz's request that the matter be reassigned to a new judge on remand.

III

Turning to Hofmann's cross-appeal, he argues the trial court abused its discretion when it declined to award him attorney fees based on Konz's alleged intransigence in the parenting plan modification trial. We disagree.

In dissolution proceedings, a party's intransigence provides an equitable basis for which a trial court may award attorney fees. *In re Marriage of Chandola*, 180 Wn. 2d 632, 656, 327 P.3d 644 (2014). Intransigence has been found where a parent "made unsubstantiated, false, and exaggerated allegations against [the other] concerning [their] fitness as a parent, which caused [them] to incur unnecessary and significant attorney fees." *Burrill*, 113 Wn. App. at 873. A trial court's decision to award attorney fees based on intransigence is reviewed for abuse of discretion. *Wixom v. Wixom*, 190 Wn. App. 719, 725, 360 P.3d 960 (2015).

Hofmann's intransigence argument is largely premised on *Burrill*. That reliance is misplaced. In *Burrill*, intransigence was found where the mother made unsubstantiated claims to a CPS investigator. 113 Wn. App at 869. Here, in contrast, while there were multiple referrals to CPS, Hofmann concedes Konz "was not the actual referrer." Nor does Hofmann cite any other compelling evidence of intransigence. On this record, Hofmann has failed to show that the trial court

abused its discretion in denying his motion for attorney fees based on alleged intransigence.

For similar reasons, we deny Hofmann's request for attorney fees on appeal. A party may request fees on appeal where applicable law grants them the right. RAP 18.1(a). Relevant here, *In the Matter of the Marriage of Bresnahan,* 21 Wn. App. 2d 385, 413, 505 P.3d 1218 (2022), establishes that attorney fees on appeal may be awarded where a party's "appeal is a continuation of the intransigence . . . demonstrated below." Because the trial court did not abuse its discretion in denying Hofmann's request for attorney fees based on alleged intransigence at trial, he is accordingly not entitled to attorney fees based on a "continuation of the intransigence" on appeal.

Affirmed in part, vacated in part, and remanded for further proceedings.

Feldman, J.

WE CONCUR:

Coburn, J.